The STATE of Texas, Appellant,

v.

**1955 BEECHCRAFT D–50 AIRCRAFT,**
Appellee.

No. 13928.

Court of Appeals of Texas,
Austin.

June 20, 1984.

Rehearing Denied Oct. 3, 1984.

Jim Mattox, Atty. Gen., W. Reed Lockhoof, Asst. Atty. Gen., Austin, for appellant.

Steven R. Bird; Bird & Bird; Childress, for appellee.

Before PHILLIPS, C.J., and POWERS and BRADY, JJ.

PER CURIAM.

Appeal is taken from a judgment denying forfeiture of a 1955 Beechcraft D–50 aircraft (the aircraft). On appeal, the State raises two points of error in which it contends that James R. Goff lacked standing to contest the forfeiture, and that the district court erred in ruling that a search warrant under which the aircraft was searched and seized was invalid because the accompanying affidavit failed to establish probable cause. This Court will reverse the judgment of the district court.

By its first point of error, the State asserts that James R. Goff lacked standing to contest the forfeiture. In this regard, the State notes that the district court, in an earlier proceeding, had found that Goff was not the owner of the aircraft. However, the district court then discovered that the owner alleged by the *State* had not been served properly. Therefore, the district court vacated and set aside all action taken and all orders of the court made on the previous hearing.

■ After proper service, another hearing was held at which Goff tendered evidence consisting of testimony from himself and others showing that he was the owner of the aircraft. The State countered this evidence by showing that Goff had never registered the aircraft with the Federal Aviation Administration and that he could not produce a bill of sale. The district court, acting as the trier of fact, was justified in resolving the conflicting testimony in favor of Goff. No error is shown.

In its second point of error, the State complains that the district court erred in ruling that the search warrant under which the aircraft was searched and seized was invalid due to an insufficient affidavit. The district court noted that the handwritten affidavit was confusing since it referenced two different airplanes. However, it is this Court's opinion that a careful examination of the handwritten affidavit reveals that it is based on statements given to the affiant by Lynn Smith, a customs air officer.

■ In determining whether there was probable cause for the search warrant, the reviewing court must limit its examination to the four corners of the affidavit. *Jones v. State,* 568 S.W.2d 847, 855 (Tex.Cr.App. 1978), *Oubre v. State,* 542 S.W.2d 875 (Tex. Cr.App.1976), and *Lopez v. State,* 535 S.W.2d 643 (Tex.Cr.App.1976). In this case, the handwritten affidavit may be considered within the "four corners of the

affidavit" because it is incorporated by reference in the search warrant.

█ Any court reviewing the initial decision of the magistrate must be mindful of the following considerations in evaluating the showing of probable cause: the analysis is one of "factual and practicable considerations of everyday life on which reasonable and prudent men, and not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949); *United States v. Head,* 693 F.2d 353, 357 (5th Cir.1982). Moreover, the affidavit is tested by a much less rigorous standard than evidence adduced at trial. *United States v. Flynn,* 664 F.2d 1296, 1304, (5th Cir.1982), cert. denied, 456 U.S. 390, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982). And the court should not consider each individual item of information separately; it should evaluate the "laminated total" of available facts. *Doescher v. Estelle,* 666 F.2d 285, 289 (5th Cir.1982); *United States v. Edwards,* 577 F.2d 883, 895 (5th Cir.1978), cert. denied, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). Additionally, the magistrate's determination that probable cause was shown by the affidavit is entitled to great deference. *United States v. Smith,* 686 F.2d 234, 238 n.3 (5th Cir.1982); *United States v. Freeman,* 685 F.2d 942, 948 (5th Cir. 1982); *United States v. Flynn, supra,* at 1304. Lastly, the determination that probable cause existed should be sustained in "doubtful or marginal cases." *United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684 (1965); *accord Freeman, supra* at 948; *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir.1977).

█ The ultimate decision in this case rests on the sufficiency of the handwritten affidavit and the intrusive nature of looking into the airplane windows. The handwritten affidavit begins by reciting that the

affiant was planning to obtain a warrant to place a "beeper" on a Beechcraft twin-engine aircraft serial number DH–3 because of information supplied by a "reliable confidential informant" that this plane would be utilized to smuggle a load of marihuana into the United States from Mexico. However, affiant's plan was interrupted when he received word that the Beechcraft (DH–3) had changed locations. At about the same time the affiant discovered that other custom agents were following a *blue* Beechcraft airplane (FAA registration number *N227ES*) which was being flown into the United States illegally from Mexico. The affiant decided to alter his plan and assist the other agents.

According to the handwritten affidavit, the affiant then proceeded to the Winters, Texas airport where the *blue* Beechcraft had landed. The affiant met with customs air officer Lynn Smith. Officer Smith advised affiant that he had apprehended the pilot of the blue Beechcraft and that he had also observed another Beechcraft airplane parked near the blue Beechcraft[1] bearing the FAA registration number (N4749B) of the aircraft originally being sought by the affiant. The handwritten affidavit goes on to state that Officer Smith had walked over to this second aircraft and felt the engines, "which were hot to the touch," indicating to Smith that the aircraft had only been there a very short time. Smith had also climbed onto the wing and looked into the aircraft through the windows. "He could see marijuana debris on the floor of the aircraft in open view. He also noted that the passenger seats had been removed from the aircraft."

As previously stated, Officer Smith told the affiant what he personally observed. There is no doubt that both the affiant and the magistrate could rely on what Officer Smith stated he saw. *Gish v. Smith,* 606

---

**1.** The trial judge noted that there was confusion in the affidavit because the *blue* Beechcraft was described as the "suspect aircraft." Although somewhat confusing in the affidavit, the "suspect aircraft" is the airplane which Smith had just trailed in from Mexico. As noted by the

appellant in its brief, a close reading of the search warrant and the handwritten affidavit clears up the confusion by adequately differentiating the two planes by serial numbers and FAA registration numbers.

S.W.2d 883, 886 (Tex.Cr.App.1980). Furthermore, there is no doubt that the quantity and reliability of information supplied by Officer Smith established probable cause. Therefore, it is unnecessary to pursue the reliability of the confidential informant.

The next relevant issue is whether the actions of Officer Smith in climbing onto the wing of the airplane and looking through the window constituted a search.

■ "A search means, of necessity, a quest for, a looking for, or a seeking out of that which offends the law. This implies a prying into hidden places for that which is concealed. It is simply not a search to observe that which is open to view." *Long v. State*, 532 S.W.2d 591, 594 (Tex.Cr.App. 1975). The focal consideration in determining whether certain actions constitute a search is whether those actions invade a legitimate expectation of privacy. *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Wheeler v. State*, 659 S.W.2d 381 (Tex.Cr.App.1983) (on motion for rehearing).

■ In order for a legitimate expectation of privacy to exist, an individual must first, by his conduct, exhibit an actual (subjective) expectation of privacy; he must show that he seeks to preserve something as private. Second, the individual's subjective expectation of privacy must be one that society is prepared to accept as reasonable; one which, when viewed objectively, is justifiable under the circumstances. *Smith v. Maryland, supra.* Under this expectation-of-privacy test, "particular attention must be given to the nature of the place at which the observed objects or activities are located, for this will bear directly upon whether there was a justified expectation of privacy as to those objects or activities." *Wheeler v. State, supra.*

■ Appellee takes the position that Officer Smith's observations while on the airplane wing were blatantly illegal because Smith was not legitimately in a position to view inside the airplane. Appellee cites *State of Texas v. Gonzales*, 388 F.2d 145 (5th Cir.1968) to support his position. In *Gonzales*, an officer stood on a drain pipe to look into a window at the defendant's residence. The court held that the officer's intrusion violated the defendant's "right to be left alone" as guaranteed by the Fourth Amendment. However, *Gonzales* may be distinguished from the present case because it involved a residence, the blinds and windows were closed, the officers made three trips to a closed window from a hiding place nearby hoping to see some narcotics, and on the third trip to the window the officer stood on a drain pipe to peer into the closed window.

Here, there is no indication that anyone sought the "right to be left alone" or sought to preserve the aircraft as private. The airplane was parked in the open at a public airport; the handwritten affidavit indicates that there were hangers at the airport. This leaves a reasonable inference that no effort was made to park the aircraft in one. Moreover, there were no coverings of any sort to prevent one from seeing inside the aircraft, and there was no one standing watch over the aircraft to prevent someone from climbing onto the wing. In *United States v. Bellina*, 665 F.2d 1335 (4th Cir.1981), the ultimate issue before the court involved the validity of an airplane search. One officer looked into the airplane from a stepladder while another officer looked inside from a wing. The court held that the officer on the stepladder had a right to be in the open part of the public airport and his observation did not infringe on the defendant's legitimate expectation of privacy. The court noted that it was unnecessary to pursue the validity of the officer's observation from the wing of the plane. However, in dicta, the court stated:

> In connection with that legitimate inspection, Officer Patterson did not unconstitutionally intrude by standing on the wing in order to see into the plane to see why the seats had been removed from the plane. [*Id.* at 1345.]

In the final analysis, this Court concludes that an individual's expectation of privacy in an airplane is akin to an individual's expectation of privacy in an automobile and therefore the appellee is afforded only limited protection by the Fourth Amendment. In *United States v. Sigal*, 500 F.2d 1118, 1121 (10th Cir.1974), the court observed:

> [W]e are not here concerned with the search of a home, but of an airplane, which certainly is as mobile, if not more so, than an automobile. The search of an automobile, for example, is far less intrusive on Fourth Amendment rights than the search of one's person or home.

Additionally, the court in *United States v. Gooch*, 603 F.2d 122, 125 (10th Cir.1979) noted:

> Insofar as the *Chambers [v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)] rule turns on the reduced expectation of privacy one has in his automobile, most of what was said in *Chadwick [United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)] concerning automobiles applies to airplanes as well. Thus an airplane's 'function is transportation and it seldom serves as one's residence or as the repository of personal effects.' ... Although it does not travel 'public thoroughfares where both its occupants and its contents are in plain view,' it ordinarily lands at airports open to the public where its occupants and contents are similarly visible. The pervasive regulation of automobiles and their drivers ... is even exceeded by the regulation of airplanes and their pilots.

The fact that Officer Smith, in the present case, had to climb onto the wing in order to see inside is not a paramount consequence. Although not specifically raised by the appellee, if there were a technical trespass, it is of very little significance in our analysis. *See Long v. State, supra; Turner v. State*, 499 S.W.2d 182 (Tex.Cr.App.1973). *See also Oliver v. United States*, — U.S. —, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

We hold that the actions of Smith did not constitute a search, and therefore his observations could be considered in determining the sufficiency of the search warrant. In addition, as stated, his observations more than satisfy the requirements for probable cause. Accordingly, the district court erred in ruling otherwise.

The judgment is reversed, and the cause is remanded for new trial.